**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Farmers State Bank v. Sponaugle,* **Slip Opinion No. 2019-Ohio-2518.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2518

FARMERS STATE BANK, APPELLANT, *v*. SPONAUGLE ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Farmers State Bank v. Sponaugle,* Slip Opinion No. 2019-Ohio-2518.]

*Foreclosure sales—Final orders—Law-of-the-case doctrine does not require this court to adhere to court of appeals' prior determination that foreclosure decree was not a final, appealable order—Foreclosure decree left no issues remaining to be determined as to rights and liabilities of the parties and therefore was a final, appealable order—Court of appeals' judgment reversed and trial court's order confirming sale reinstated.*

(No. 2017-1377—Submitted January 30, 2019—Decided June 27, 2019.)

APPEAL from the Court of Appeals for Darke County, No. 16CA00004, 2017-Ohio-4322 and 2017-Ohio-7744.

_____

**FRENCH, J.**

{¶ 1} This appeal requires us to address once again what constitutes a final, appealable foreclosure decree. Before reaching us, the long, winding path of this foreclosure action included two intermediate-court appeals initiated by appellees, Steven and Karen Sponaugle.

{¶ 2} The Sponaugles' first appeal challenged the trial court's entry of a foreclosure decree in favor of appellant, Farmers State Bank ("Farmers"). The Second District Court of Appeals dismissed that appeal for lack of a final, appealable order because the foreclosure decree did not state the amounts owed to two other lienholders. During the first appeal, the Sponaugles' property sold at a sheriff's sale.

{¶ 3} The Sponaugles' second appeal challenged the trial court's order confirming the sale of the property. The Second District concluded that the law-of-the-case doctrine required adherence to its earlier decision that the foreclosure decree was not a final, appealable order. In the absence of a final, appealable order, the court of appeals held that the trial court had no authority to confirm the sale.

{¶ 4} Farmers now appeals the Second District's reversal of the trial court's confirmation of sale. We reverse the judgment of the court of appeals, conclude that the foreclosure decree against the Sponaugles was a final, appealable order, and reinstate the trial court's confirmation of sale.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 5} In October 2013, Farmers initiated a foreclosure action against the Sponaugles seeking judgment on three promissory notes secured by three mortgages on the Sponaugles' property in Darke County, Ohio. Farmers also named as defendants other lienholders with a potential interest in the property.

{¶ 6} By way of an agreed entry in May 2014, the trial court entered judgment against the Sponaugles in the amount of $236,378.89, plus interest. The entry also stated that Farmers would dismiss the action if the Sponaugles paid $120,000 on or before August 23, 2014. If they failed to pay, then Farmers would

2

be entitled to foreclose on the mortgages free and clear of all further claims of the Sponaugles.  The Sponaugles did not make any payments to Farmers and instead filed a bankruptcy petition.  After dismissal of the bankruptcy case, the trial court reactivated the foreclosure case and granted summary judgment in December 2015 in favor of Farmers against the Sponaugles.

### The foreclosure decree

{¶ 7} On January 12, 2016, the trial court entered a foreclosure decree against the Sponaugles.  The foreclosure decree granted judgment for Farmers and found the Sponaugles liable for the total amount of principal on the three loans, plus interest.  The decree also stated that Farmers' three mortgage liens constituted the first, second, and third best liens on the property.

{¶ 8} The court found that all the defendants had been duly served and entered judgment against four nonanswering defendants: Chase Bank, GT Daubenspeck D.C., Inc., Midland Funding, L.L.C., and the Ohio Department of Taxation.

{¶ 9} The foreclosure decree also stated that the Darke County Treasurer had a tax lien on the property and that American Budget Company had a lien interest by virtue of a certificate of judgment.  The decree did not state the amounts due on those two liens.  The decree ordered the sale of the property and payment of proceeds in accordance with the following order of priority: the Darke County Treasurer's tax lien, Farmers' three mortgage liens, and then the judgment lien of American Budget Company.

### Sheriff's sale and appeal of the foreclosure decree

{¶ 10} The Sponaugles appealed the foreclosure decree to the Second District.  The trial court granted the Sponaugles' motion to stay the court's foreclosure judgment, but the court of appeals denied their request to waive the bond requirement.  Because the Sponaugles did not post the required bond, a sheriff's sale took place on February 26, 2016.

{¶ 11} In March 2016, after the sheriff's sale but before the confirmation of sale, the Second District issued a show-cause order questioning whether the trial court's foreclosure entry was a final, appealable order. The court of appeals then dismissed the Sponaugles' appeal for lack of a final, appealable order because the foreclosure decree did not state the amounts due on the liens held by the Darke County Treasurer and American Budget Company. 2d Dist. Darke No. 16CA000002 (Apr. 18, 2016) ("*Sponaugle I*").

**Order confirming the sale of the property**

{¶ 12} On April 21, 2016, the trial court granted Farmers' motion to confirm the sale of the property and ordered the distribution of proceeds from the sale and the execution and delivery of the property to Farmers by deed. Farmers purchased the property. After the payment of court costs, real-estate taxes to Darke County, and miscellaneous fees, the remaining funds were paid to Farmers and the court entered a deficiency judgment for Farmers.

{¶ 13} The confirmation order also noted that American Budget Company released its certification-of-judgment lien on or about February 16, 2016.

**Appeal of the order confirming the sale**

{¶ 14} The Sponaugles appealed the trial court's confirmation of the sheriff's sale, asserting two assignments of error with the same underlying argument: that the trial court erred in confirming the sale of the Sponaugles' property because the underlying foreclosure decree was not a final, appealable order. The Sponaugles did not assert any other grounds for challenging the validity of the confirmation of sale.

{¶ 15} The Second District concluded that the law-of-the-case doctrine required adherence to its earlier determination that the foreclosure decree was not a final, appealable order. 2017-Ohio-4322, 92 N.E.3d 355, ¶ 18 ("*Sponaugle II*"). In the absence of a final, appealable order, the court of appeals concluded that the

trial court abused its discretion by ordering the sale of the property and confirming the sale. *Id*. at ¶ 20.

{¶ 16} Farmers filed an application for reconsideration, which the Second District granted in part and denied in part. The court granted reconsideration with respect to its remand language in *Sponaugle II*, which had instructed the trial court to vacate the confirmation of sale and order the return of the deed to the Sponaugles. *See id.* at ¶ 33. Upon learning that Farmers had already conveyed the property to third parties, the court of appeals modified its prior remand language to instruct the trial court to vacate the confirmation of sale and to allow the trial court to order a new sale of the property and then determine the possessory interests of the parties pending a new confirmation of sale. The court, however, denied reconsideration of its determination that the trial court lacked authority to confirm the sheriff's sale, because of the nonfinality of the foreclosure decree.

{¶ 17} We accepted Farmers' discretionary appeal, which presents two propositions of law:

> 1. A sheriff's sale can be confirmed even if the underlying foreclosure decree was a non-final order.
>
> 2. A foreclosure decree which determines liability and the amount due the first mortgagor and leaves the remaining amounts to mechanical calculation is a final order subject to execution.

*See* 152 Ohio St.3d 1405, 2018-Ohio-723, 92 N.E.3d 878.

**OVERVIEW OF FORECLOSURE ACTIONS**

{¶ 18} Foreclosure actions proceed in two stages, both of which end in a final, appealable judgment: the order of foreclosure and the confirmation of sale. *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 39. The order of foreclosure determines the extent of each lienholder's

interest, sets out the priority of the liens, determines the other rights and responsibilities of each party, and orders the property to be sold by sheriff's sale. *Id.*; R.C. 2323.07. On appeal, parties may challenge the court's decision to grant the decree of foreclosure. *Roznowski* at ¶ 39. Once the foreclosure decree is final and upon completion of the appeals process, the rights and responsibilities of the parties under the foreclosure decree may no longer be challenged. *Id.*

{¶ 19} The confirmation of sale is an ancillary proceeding limited to whether the sheriff's sale conformed to law. *Id.* at ¶ 40. If the trial court, after examining the proceedings, finds that the sale conformed with R.C. 2329.01 through 2329.61, inclusive, then the court enters an order confirming the sale and orders the dispersal of the proceeds. R.C. 2329.31. An appeal of the confirmation of sale is limited to challenging the confirmation order itself and to issues related to confirmation proceedings—for example, computation of the final total amount owed by the mortgagor, accrued interest, and amounts advanced by the mortgagee for inspections, appraisals, property protection, and maintenance. *Roznowski* at ¶ 40. The trial court's decision to confirm a sheriff's sale of property will not be reversed absent an abuse of discretion. *Ohio Savs. Bank v. Ambrose*, 56 Ohio St.3d 53, 55, 563 N.E.2d 1388 (1990).

## ANALYSIS

{¶ 20} We begin with Farmers' second proposition of law, which challenges the Second District's determination that the trial court erred in confirming the sale of the Sponaugles' property because the underlying foreclosure decree was not a final, appealable order. We conclude that the foreclosure decree against the Sponaugles was a final, appealable order that fully addressed the rights and responsibilities of all parties.

### Law-of-the-case doctrine

{¶ 21} Before addressing the finality of the foreclosure decree, we address whether the law-of-the-case doctrine requires us to adhere to the Second District's

prior decision that the foreclosure decree was not a final, appealable order. We conclude that it does not.

{¶ 22} The law-of-the-case doctrine provides that legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels. *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 1, citing *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984). The rule ensures consistent results in a case, avoids endless litigation by settling the issues, and preserves the constitutional structure of superior and inferior courts. *Id.* at ¶ 14. We consider the doctrine to be a rule of practice rather than a binding rule of substantive law, however, and we will not apply it to achieve unjust results. *Nolan* at 3.

{¶ 23} The Second District correctly concluded that the law-of-the-case doctrine precluded its reexamination of the nonfinality of the foreclosure decree. Presented with the same facts and issues, the court was bound to its previous determination in the Sponaugles' first appeal. *Giancola* at ¶ 16.

{¶ 24} We, however, are not bound by prior decisions of a lower court. The Ohio Constitution confers on this court the authority to "review and affirm, modify, or reverse [a] judgment of the court of appeals." Ohio Constitution, Article IV, Section 2(B)(2)(e). The law-of-the-case doctrine therefore does not insulate appellate decisions from review, particularly when, as here, the court of appeals has adhered to a decision that we conclude is erroneous. *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41, 44, 448 N.E.2d 1159 (1983), fn. 7; *New York Life Ins. Co. v. Hosbrook*, 130 Ohio St. 101, 106, 196 N.E. 888 (1935). Allowing a lower court's erroneous declaration of law to prevent our review would be "repugnant" to our constitutional grant of jurisdiction. *Hosbrook* at 106.

{¶ 25} The concurring opinion contends that we lack jurisdiction to address the finality of the trial court's foreclosure decree, because no party appealed the Second District's judgment in *Sponaugle I*. Concurring opinion at ¶ 36. We are

not, however, reviewing *Sponaugle I*. We are reviewing the Second District's judgment in *Sponaugle II*. And in that decision, the court of appeals vacated the trial court's confirmation of the sheriff's sale for one reason—it determined that the trial court lacked authority to confirm the sale for lack of a final foreclosure decree. The nonfinality of the foreclosure decree is squarely before us as the Second District's reason for vacating the confirmation order and for determining that the trial court abused its discretion. No jurisdictional bar prevents us from reviewing that determination. And as explained above, the law-of-the-case doctrine does not insulate an erroneous appellate decision from our review.

{¶ 26} We therefore decline to apply the law-of-the-case doctrine here and address the merits of Farmers' second proposition of law with respect to the finality of the foreclosure decree.

### Finality of the foreclosure decree

{¶ 27} The Second District concluded that the foreclosure decree was not a final, appealable order, because it did not state the amounts due on the liens held by the Darke County Treasurer and American Budget Company. In the absence of a final, appealable order, the court of appeals concluded that the trial court lacked authority to execute the foreclosure decree by ordering the sale of the property or confirmation of sale. Our decision in *Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, however, leads to a different conclusion.

{¶ 28} *Roznowski* involved a foreclosure decree that included in its damage award the future expenses incurred by the bank for inspections, appraisals, property protection, and maintenance. Even though the decree did not specify the amount of these liabilities, we concluded that it was a final, appealable order: "Each party's rights and responsibilities were fully set forth—all that remained was for the trial court to perform the ministerial task of calculating the final amounts that would arise during confirmation proceedings," *id*. at ¶ 20.

**{¶ 29}** Likewise, the foreclosure decree here resolved all the rights and liabilities of the parties. The failure to set out the amount of taxes due to the county does not render the foreclosure decree interlocutory. A court cannot state with certainty the accrued taxes due at the time of a foreclosure decree, since that amount will likely change depending on how long it takes to sell the property. Here, for example, the trial court noted that the amount of taxes due at the time of the foreclosure decree had changed by the time the court entered the confirmation of sale. No judgment of foreclosure and sale would ever be final if we required courts to compute taxes and all future costs as a prerequisite for finality. *Id.* at ¶ 16. If a dispute as to the final amounts due does arise, then parties may challenge those amounts by appealing the confirmation of sale. *Id*. at ¶ 40.

**{¶ 30}** The foreclosure decree is also final with respect to the rights and claims of American Budget Company. The decree describes American Budget as having a "valid and subsisting lien pursuant to its Certificate of Judgment, recorded on November 14, 2012" by the Darke County Clerk of Courts. A certificate of judgment must include, among other things, "*the amount of the judgment and costs*, the rate of interest, if the judgment provides for interest, and the date from which such interest accrues." (Emphasis added.) R.C. 2329.02. By incorporating by reference the certificate of judgment, the foreclosure decree conclusively states the full amount of the Sponaugles' liability to American Budget. The final amount due may change between the times of the foreclosure entry and of the confirmation of sale because of accrued interest or possible penalties. But as with the tax lien, all that remains is the ministerial task of calculating the final amount due after sale of the property. The decree leaves no remaining question as to the rights of American Budget on its lien.

**{¶ 31}** The court of appeals cited *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 270, 533 N.E.2d 325 (1988), for the proposition that a trial court errs in allowing the foreclosure and sale of property before all the claims and

counterclaims in a foreclosure action have been resolved. In this case, however, there were no claims pending when the trial court entered its foreclosure decree. The Sponaugles dismissed their counterclaims in June 2014, more than 18 months before the January 2016 foreclosure decree. And although the Darke County Treasurer asserted a cross-claim under R.C. 323.11 (tax liens shall attach to real property until paid), R.C. 323.47(B)(1) (if real estate is sold at judicial sale, tax liens must be discharged out of the sale proceeds), and R.C. 5721.10 (state shall have first lien on lands for unpaid tax assessments), the foreclosure decree fully adjudicated the county treasurer's cross-claim in accordance with this statutory scheme: it gave the county treasurer priority over all other lienholders.

{¶ 32} The order of foreclosure here determined the extent of each lienholder's interest, set out the priority of the liens, and determined the rights and responsibilities of each party. "Liability is fully and finally established when the court issues the foreclosure decree and all that remains is mathematics, with the court plugging in final amounts due after the property has been sold at a sheriff's sale." *Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, at ¶ 25. Because there were no issues remaining to be determined as to the rights and liabilities of the parties, the foreclosure decree was a final, appealable order.

**Farmers' alternative argument**

{¶ 33} Farmers' remaining proposition of law presents an alternative basis for reversing the judgment of the court of appeals: even if the underlying foreclosure decree is not a final, appealable order, a trial court can still confirm a sheriff's sale. We need not address this argument because our conclusion here that the foreclosure decree is a final, appealable order disposes of Farmers' appeal and provides the relief Farmers seeks—reversal of the Second District's sole basis for vacating the confirmation of sale.

**CONCLUSION**

{¶ 34} For all these reasons, we reverse the judgment of the court of appeals and reinstate the trial court's confirmation of sale.

Judgment reversed.

O'CONNOR, C.J., and FISCHER, DONNELLY, and STEWART, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY, J.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 35} I concur in the majority's judgment reversing the court of appeals but do so for different reasons. The majority reverses the court of appeals on the basis that *in a prior appeal*, the court of appeals erroneously concluded that the trial court's foreclosure order was not final. I have two problems with that. First, under our rules, the determination made in the earlier appeal is not properly before us. Second, the question whether the decree of foreclosure is a final order that may be appealed to the court of appeals is a question separate from whether a trial court may confirm a sale that has been effected by court order. I would resolve this case by holding that irrespective of whether the foreclosure order was final, the trial court did not abuse its discretion by confirming the sale of the Sponaugles' property.

**The issue decided by the majority is not before us**

{¶ 36} This is the second appeal involving the dispute between Farmers State Bank ("Farmers") and the Sponaugles. The Sponaugles first appealed from the trial court's judgment ordering the foreclosure and sale of their property. At the same time, the Sponaugles sought to stay the sheriff's sale pending appeal. The trial court granted the motion contingent on the posting of a supersedeas bond. Rather than post the bond, the Sponaugles asked the Second District Court of Appeals for a stay without a bond. That request was denied. The Second District

ultimately dismissed this first appeal for lack of a final order, concluding that the foreclosure decree did not "determine the amounts due on all the liens." 2d Dist. Darke No. 16CA00002 (Apr. 18, 2016) ("*Sponaugle I*"). No appeal was taken from the Second District's judgment in *Sponaugle I* to this court.

{¶ 37} Pursuant to the trial court's foreclosure decree and while the first appeal was pending, the Sponaugles' property was sold at a sheriff's auction. After the appeal was dismissed, the trial court issued an order confirming the sale. The Sponaugles appealed again, this time from the confirmation order. In the second appeal, the Second District concluded that the law-of-the-case doctrine prevented it from revisiting its prior determination that the foreclosure order was not a final, appealable order, explaining that Farmers failed to raise any argument regarding finality in *Sponaugle I* or appeal the judgment of dismissal to this court. 2017-Ohio-4322, 92 N.E.3d 355, ¶ 18 ("*Sponaugle II*"). The Second District therefore held that in light of its judgment that the foreclosure order was not final, the trial court had abused its discretion in confirming the sale. *Id.* at ¶ 20. Farmers appealed the judgment in *Sponaugle II* to this court.

{¶ 38} The majority resolves this case by reviewing the Second District's determination that the foreclosure decree was not a final order. Majority opinion at ¶ 27-32. The problem with that approach is that the Second District made that determination in *Sponaugle I* and that judgment was not appealed to this court. The majority attempts to get around that quandary a couple of different ways. It first claims that the finality issue is squarely before us because in *Sponaugle II*, the Second District vacated the sale order on the grounds that the foreclosure decree previously had been deemed nonfinal. Majority opinion at ¶ 25. (Of course, in *Sponaugle II*, the Second District expressly declined to revisit its holding regarding the finality of the foreclosure decree under the law-of-the-case doctrine. *Sponaugle II* at ¶ 18. The majority is aware of this and even goes so far as to say that the Second District "correctly concluded that the law-of-the-case doctrine precluded its

reexamination of the nonfinality of the foreclosure decree," majority opinion at ¶ 23.)

{¶ 39} Then, the majority ventures to conclude that this court may review the judgment about finality issued in *Sponaugle I* anyway because the law-of-the-case doctrine does not prevent us from doing so. Majority opinion at ¶ 25. But the law-of-the-case doctrine is not the only bar to our review of judgments not appealed to this court.

{¶ 40} Our jurisdiction originates in the Ohio Constitution, which provides that "in cases of public or great general interest, the supreme court * * * may review and affirm, modify, or reverse the judgment of the court of appeals." Ohio Constitution, Article IV, Section 2(B)(2)(e). The Constitution also mandates that this court "prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." Ohio Constitution, Article IV, Section 5(B). In accordance with that directive, we have issued Rules of Practice of the Supreme Court of Ohio.

{¶ 41} This court has discretion to accept jurisdictional appeals, which are appeals taken "from a decision of a court of appeals," Sup.Ct.Prac.R. 5.02(A). To perfect a jurisdictional appeal, the appellant "shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed." Sup.Ct.Prac.R. 7.01(A)(1)(a)(i). And except in situations not applicable here, "the time period designated in this rule for filing a notice of appeal and memorandum in support of jurisdiction is mandatory, *and the appellant's failure to file within this time period shall divest the Supreme Court of jurisdiction to hear the appeal*." (Emphasis added.) Sup.Ct.Prac.R. 7.01(A)(1)(b).

{¶ 42} Even if the court can avoid application of the law-of-the-case doctrine, this court is still bound by its rules. The Second District's judgment in *Sponaugle I* was not appealed within the mandatory time period. Under our rules, we therefore lack authority to review that judgment. Our Constitution's grant of

authority to "review and affirm, modify, or reverse *the judgment* of the court of appeals" does not mean that this court may review any judgment it pleases; rather, we are limited to those judgments over which our jurisdiction has been properly invoked. The only issue arising from the judgment before this court relates to the trial court's decision to confirm the sale in light of the Second District's prior determination that the foreclosure decree was not a final order.

{¶ 43} Because the judgment actually deciding the final-order issue was not appealed to this court, I would decline to review that judgment here. Indeed, there is no need to stretch our rules to review that judgment, because the question whether the foreclosure decree is final and appealable is not dispositive of the question whether the trial court properly confirmed the sale of the property. Regardless of whether the court of appeals was correct in its decision about finality for the purposes of appeal in *Sponaugle I*, the trial court did not err in entering the confirmation order.

## The sale was valid and could be confirmed

{¶ 44} The court of appeals concluded that the trial court "lacked the authority" to confirm the sale of the Sponaugles' property in the absence of a final, appealable foreclosure order. *Sponaugle II*, 2017-Ohio-4322, 92 N.E.3d 355, at ¶ 20. The majority reverses the court below for the sole reason that it believes that the prior order was final and appealable. In making the finality issue determinative of this appeal, the majority confuses what in reality are two separate issues: when an order may be appealed and when an order may be enforced.

{¶ 45} The finality issue addresses an appellate court's jurisdiction to review a trial-court order. Generally, finality depends on whether an order meets the requirements of R.C. 2505.02.

{¶ 46} That issue is distinct from whether a court order may be executed upon. Because by definition interlocutory orders remain subject to revision, execution on such orders is generally disfavored. But this is far from a blanket rule.

14

Indeed, there are many situations in which an interlocutory order may be enforced. *See*, *e.g.*, Civ.R. 64 (preserving remedies providing "for seizure of person or property" for the purposes of securing satisfaction of judgment during course of an action); Civ.R. 65 (providing for preliminary injunctions and temporary restraining orders); *Sauer v. Cox*, 5 Ohio N.P. 460, 7 Ohio Dec. 507, 508, 1897 Ohio Misc. LEXIS 277 (1898) (judicial sale may be decreed on interlocutory order).

{¶ 47} In reversing the confirmation order, the court of appeals concluded that because it had previously decided that the order did not meet the appellate finality requirements of R.C. 2505.02, the trial court erred by entering the confirmation order. In doing so, it improperly grafted the appellate finality requirements onto the confirmation standards established by Ohio law.

{¶ 48} A confirmation order decrees that a judicially ordered foreclosure sale has been conducted in conformity with legal requirements. *CitiMortgage, Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 40. The standard for the issuance of such an order is set forth in R.C. 2329.31. That section provides that "if the court of common pleas finds that the sale was made, in all respects, in conformity with sections 2329.01 to 2329.61 of the Revised Code, it shall, within thirty days of the return of the writ, direct the clerk * * * to make an entry on the journal that the court is satisfied of the legality of such sale." R.C. 2329.31(A). The statute also permits the court to stay the confirmation of the sale to allow a property owner time to redeem the property or for any other reason it deems appropriate. *Id.*

{¶ 49} But nothing in R.C. 2329.31 requires an appealable foreclosure order as a prerequisite to confirming the sale. As we have previously explained, "[a]lthough the statutes logically *assume* the existence of a final foreclosure entry, they do not impose upon the trial court an affirmative duty to confirm the existence of an order prior to entering the confirmation of sale." (Emphasis sic.) *State ex rel. Sponaugle v. Hein*, 153 Ohio St.3d 560, 2018-Ohio-3155, 108 N.E.3d 1089, ¶ 28.

Indeed, in certain situations, Ohio courts have confirmed foreclosure sales absent a final, appealable order. *See*, *e.g.*, *Mulby v. Poptic*, 8th Dist. Cuyahoga No. 98324, 2012-Ohio-5731, ¶ 15; *Falls Sav. Bank, F.S.B. v. Cadwell*, 9th Dist. Summit No. 14644, 1991 Ohio App. LEXIS 416, *8-10 (Jan. 31, 1991). When considering whether to confirm a foreclosure sale, the question before the court is whether the sale conformed to the procedures outlined in R.C. 2329.01 through 2329.61.

{¶ 50} Here, the court of appeals determined that the confirmation order was issued in error on the basis that the sale did not comply with the terms of R.C. 2329.09. *Sponaugle II*, 2017-Ohio-4322, 92 N.E.3d 355, at ¶ 29-31. That section provides:

> The writ of execution against the property of a judgment debtor issuing from a court of record shall command the officer to whom it is directed to levy on the goods and chattels of the debtor. If no goods or chattels can be found, the officer shall levy on the lands and tenements of the debtor.

R.C. 2329.09 addresses the procedure for satisfying general writs of execution, requiring the sheriff first to sell goods and chattels and then to levy on the lands of the debtor.

{¶ 51} That procedure is inapplicable here, however, since Farmers sought to enforce its lien through a foreclosure action. "In general, liens may be enforced in several ways, *inter alia*, an R.C. 2323.07 foreclosure action or a writ of execution pursuant to R.C. Chapter 2329." *Denune v. Carter-Jones Lumber Co.*, 144 Ohio App.3d 266, 269, 759 N.E.2d 1289 (2d Dist.2001), citing *Feinstein v. Rogers*, 2 Ohio App.3d 96, 97-98, 440 N.E.2d 1207 (10th Dist.1981); *see also Ohio Dept. of Taxation v. Plickert*, 128 Ohio App.3d 445, 448, 715 N.E.2d 239 (11th Dist.1998) (recognizing an "array of mechanisms" to enforce the judgment of a creditor,

including execution upon the goods and chattels of the debtor under R.C. 2329.09 and foreclosure on realty pursuant to R.C. 2323.07); *Sheely v. Gindlesberger*, 5th Dist. Holmes No. 16CA008, 2017-Ohio-200, ¶ 18-19.

{¶ 52} If a creditor chooses to enforce its lien through a foreclosure action, R.C. 2323.07 controls. That section states, "When a mortgage is foreclosed or a specific lien enforced, a sale of the property * * * shall be ordered by the court having jurisdiction or the county board of revision with jurisdiction * * *." Again, nothing in the foreclosure statute requires that the foreclosure decree be appealable before the trial court may order the sale of property.

{¶ 53} Finally, the court of appeals also relied on our decision in *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 533 N.E.2d 325 (1988). There, we concluded that the trial court erred by allowing the foreclosure and sale of mortgaged property prior to the disposition of all pending counterclaims. *Id.* at 270. But as the majority explains, in this case, there were no counterclaims pending when the trial court ordered the sale of the property.

{¶ 54} The foreclosure decree established the amount for which the Sponaugles were liable to Farmers under loans secured by three mortgages on the Sponaugles' property. It also established the priority of liens: a tax lien on the property belonging to the Darke County Treasurer, Farmers' three mortgage liens, and finally, an American Budget Company lien established through a certificate of judgment (though American Budget Company released its lien prior to confirmation of the sale). Thus, unlike in *Marion Prod.*, the trial court had fully determined the obligations of each party.

{¶ 55} The foreclosure sale was made "in all respects, in conformity with sections 2329.01 to 2329.61 of the Revised Code," R.C. 2329.31. Accordingly, the trial court did not abuse its discretion in confirming the sale of property. For this reason, I concur in the judgment of the majority reversing the court of appeals and reinstating the trial court's order confirming the sale of the property.

KENNEDY, J., concurs in the foregoing opinion.

————————————

Thompson Hine, L.L.P., and Terry W. Posey Jr., for appellant.

Andrew M. Engel Co., L.P.A., and Andrew M. Engel; and DannLaw, Brian D. Flick, Marc E. Dann, and William C. Behrens, for appellees.

Porter, Wright, Morris & Arthur, L.L.P., H. Grant Stephenson, and L. Bradfield Hughes, urging reversal for amici curiae Independent Community Bankers of America and Community Bankers Association of Ohio.

Marchal & Marchal Ltd. and John Marchal Jr., urging reversal for amicus curiae Greenville National Bank.

Law Offices of Stephen D. Miles and Stephen D. Miles, urging reversal for amicus curiae Farmers and Merchants Bank.

Porter, Wright, Morris & Arthur, L.L.P., and H. Grant Stephenson, urging reversal for amicus curiae Osgood State Bank.

Porter, Wright, Morris & Arthur, L.L.P., and Tami Hart Kirby, urging reversal for amicus curiae Twin Valley Bank.

————————————